IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LUIS MUNIZ, JR., | § | |
| TDCJ-CID # 1115226, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | C.A. NO. C-07-76 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| DIRECTOR, TDCJ-CID, | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner is an inmate in the Texas Department of Criminal Justice,

Correctional Institutions Division ("TDCJ-CID"), and currently is incarcerated at

the Jordan Unit in Pampa, Texas.  Proceeding pro se, he filed this habeas corpus

petition pursuant to 28 U.S.C. § 2254 on February 6, 2007.  (D.E. 1).  On March

26, 2007, respondent filed a motion for summary judgment arguing that petitioner

has failed to demonstrate that he is entitled to habeas relief and that his petition is

time barred.  (D.E. 8).  For the reasons stated herein, it is respectfully

recommended that the respondent's motion for summary judgment be granted.

### I.  JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to

28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the

inmate is confined, or where the conviction was obtained.  Wadsworth v. Johnson,
235 F.3d 959, 961-62 (5th Cir. 2000).  Petitioner was convicted by the 214th
Judicial District Court of Nueces County, Texas, and therefore, jurisdiction is
proper in this Court.[1]

## II.  BACKGROUND

### A.    Procedural Background.

Respondent has lawful custody of petitioner pursuant to a judgment and
sentence of the 214th Judicial District Court of Nueces County, Texas, in cause
number 01-CR-1907-F, styled State of Texas v. Luis Muniz, Jr.  Ex parte Muniz,
App. No. WR-66,380-01, at 89.  In May 2002, a jury found him guilty of
manslaughter and sentenced him to ten years confinement in the TDCJ-CID.  Id.

On September 29, 2005, the Thirteenth Court of Appeals affirmed
petitioner's conviction.  Muniz v. State, No. 13-02-423-CR, 2005 WL 2402670
(Tex. App. Sept. 29, 2005) (unpublished).  He filed a petition for discretionary
review with the Texas Court of Criminal Appeals, but on March 8, 2006, the court
dismissed it as untimely filed.  On November 27, 2006, he filed a state application

---

[1] In respondent's motion for summary judgment, he argues that the Court has jurisdiction,
"with the exception of several claims identified below," but then fails to elaborate on which
claims he believes the Court does not have jurisdiction, or his reasoning for his assertion that the
Court lacks jurisdiction.  See (D.E. 8, at 1).  It is respectfully recommended that respondent has
failed to present any reason why jurisdiction is not proper in this Court.

for writ of habeas corpus.  Ex parte Muniz, App. No. WR-66,380-01, at 2-36.  On

January 17, 2007, the Texas Court of Criminal Appeals denied his application

without written order.  Id. at cover.  On February 6, 2007, he filed this petition to

challenge his conviction.  (D.E. 1, at 9).

## B.    Factual Background.

In 2001, petitioner was living with his brother, a Corpus Christi Police

Officer, and his brother's girlfriend, the victim.  State v. Muniz, Cause No. 01-CR-

1907-F, Reporter's Record, vol. 8, at 18-20.[2]  Just before 1:00 a.m. on June 23,

2001, he arrived home and got into an argument with the victim.  Id. at 56-65.

Because of past experiences, he believed that she had violent tendencies.  Id. at 20-

34.  His brother denied his assertions that she had ever been violent or threatening

in the past.  4 R.R. 199, 226.  Nevertheless, petitioner testified that when she

allegedly threatened to shoot him, he believed her because she was outraged and

because there were multiple guns in the home.  3 R.R. 65-67.

Petitioner testified that he tried to flee through the front door of the home,

but that before he reached the door, the victim hit him on the bridge of the nose

with a black object that he believed to be a gun.  Id. at 71-72.  He testified that he

---

[2] The Reporter's Record will be designated as "R.R." with the volume number preceding the designation and the page number following.

3

attempted to push her away, but that she kept attacking him.  Id. at 72-73.  He had

a knife in his pocket that he used for work, and he pulled it out, opened it, and

stabbed her with it.  Id. at 74-75, 86-87.  He believed that he only stabbed her one

time, but in fact, he stabbed her four times.  Id. at 75-76.

The victim called 9-1-1.  Id. at 77-81.  Petitioner testified that while she was

on the phone, he retrieved a towel to try and aid her.  Id.  When he realized the

extent of her injuries, he called for an ambulance, and opened the garage door so

that the paramedics could get into the home.  Id. at 82-83.  A police dispatch

coordinator testified that there were two calls from the home on the night of June

23, 2001, the first at 1:06 a.m. and the second at 1:10 a.m.  7 R.R. 62.  Testimony

revealed that petitioner's statements that he tried to help the victim were

inconsistent with his appearance when police arrived - he did not have blood on his

clothing or person as would be expected if he had attempted to treat the victim's

wounds.  3 R.R. 305-07.

Corpus Christi Police arrived five minutes after receiving a report of a

stabbing at the home, at 1:12 a.m.  3 R.R. 259-60; 7 R.R. 80.  When they arrived,

petitioner was yelling at the victim, and that when he saw the police, he held his

hands in the air and said "I did it.  I did it."  3 R.R. 263-64; 4 R.R. 7.  The victim

was unable to talk, but still alive.  3 R.R. 263-64.  Police did not find a weapon

near her, nor was there blood on any of the guns that were found in the home.  Id. at 284-85; 4 R.R. 6; 6 R.R. 101-02; 7 R.R. 128-29.  At the time of his arrest, petitioner told police that he stabbed the victim because "she was trying to take over the house" and because she was going to get a gun from the bedroom.  4 R.R. 12-13, 19-20, 58, 65.

The medical examiner who performed the victim's autopsy testified that three of the victim's stab wounds were not life threatening, but a fourth wound, which pierced her heart, was the cause of her death.  7 R.R. 137-42.  He determined that due to internal bleeding, she would likely have lost consciousness within a minute or two after receiving the wound.  Id. at 143-45, 158.  He also testified that although it was only a "ballpark" estimate, he believed that someone with her wound would likely collapse and die within one to two minutes.  7 R.R. 144-45.

There were many inconsistencies between the different witnesses' testimony at petitioner's trial, including a dispute over a threatening phone message he left his brother before his trial.  Petitioner testified that at the end of the message, he said "I am going to kill you, dude," but the state portrayed his statement as "I am going to kill you, too."  8 R.R. 100-101; 8 R.R. 188-91.  The tape was played to the jury, and a transcript was also admitted into evidence.  The prosecutor portrayed

him as a cold-blooded killer, and hypothesized that he had stabbed the victim purposefully - once before she called 9-1-1, and then, he inflicted the deadly injury just before police arrived.  9 R.R. 52-56.  Petitioner's trial counsel elicited testimony that the victim had threatened petitioner and others in the past and that she was dangerous and violent, and he emphasized that the physical evidence fit with petitioner's assertion of self-defense.  Id. at 32-40, 44.

### III.  PETITIONER'S ALLEGATIONS

Petitioner raises the following claims in his petition for habeas relief:

(1)     He claims that he received ineffective assistance of counsel because counsel:

    (a)     failed to adequately prepare for trial, (D.E. 1, at 7);

    (b)     failed to file a pre-trial motion to suppress res gestae statements, id.;

    (c)     inadequately cross-examined five of the state's witnesses, id. at 7, 14; and

(2)     He claims that his due process rights were violated because the state cited the Texas case Ex parte Townsend in its Answer on state habeas

review.  Id. at 7.[3]

## IV.  EXHAUSTION OF STATE REMEDIES

**A.      The AEDPA's Exhaustion of State Remedies Standard**.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), a federal writ of habeas corpus from an inmate in state custody shall

not be granted unless the inmate has exhausted his remedies at law in the state

courts, or there is an absence of state court remedies or circumstances that render

state remedies insufficient to protect the individual's rights.  28 U.S.C.

§ 2254(b)(1).

The exhaustion requirement ensures that state courts have an opportunity to

consider federal law challenges to state custody before the federal courts can

entertain such assertions.  Duncan v. Walker, 533 U.S. 167, 178-79 (2001).  The

substance of a habeas petitioner's claim must have been "fairly presented" to state

courts before being presented to the federal courts.  Nobles v. Johnson, 127 F.3d

409, 420 (5th Cir. 1997) (citing Picard v. Connor, 404 U.S. 270, 275 (1971)).  "[A]

habeas petitioner fails to exhaust state remedies when he presents material

_____

[3] In moving for summary judgment, respondent notes that petitioner's allegations include "that his trial counsel rendered ineffective assistance and he was [denied] due process during state habeas."  (D.E. 8, at 4).  Respondent fails to elaborate on the nature of petitioner's claims, and gives only cursory attention - amounting to just over one page - to addressing the merits of all of petitioner's four separate claims.

additional evidentiary support to the federal court that was not presented to the state court." Graham v. Johnson, 94 F.3d 958, 968 (5th Cir. 1996) (per curiam) (citation omitted).  If a claim is "in a significantly different and stronger evidentiary posture than it was before the state courts," then the exhaustion requirement of § 2254(b) has not been met.  Joyner v. King, 786 F.2d 1317, 1320 (5th Cir. 1986).

However, where new information provided by petitioner "does not fundamentally alter" the claim, but supplements the record, it "does not place the claim [] in a significantly different legal posture."  Morris v. Dretke, 413 F.3d 484, 496 (5th Cir. 2005) (citation omitted).  In Morris, the Fifth Circuit found that while the petitioner's claim was "in a comparatively stronger evidentiary posture," this was mitigated in favor of exhaustion due to several factors, including a finding that petitioner's briefs in state court were detailed in both law and fact, the new evidence did not "fundamentally alter [the petitioner's] state claim," and nothing in the record indicated an "'attempt [] to expedite federal review by deliberately withholding essential facts from the state courts.'"  Id. (citations omitted).

Where a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" then the

claims are procedurally defaulted.  Nobles, 127 F.3d at 420 (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).  Federal habeas relief may only be granted on procedurally defaulted claims if petitioner "can demonstrate cause for default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Moawad v. Anderson, 143 F.3d 942, 947 (5th Cir. 1998) (citation omitted).  A claim is procedurally barred from federal habeas review if the petitioner would be precluded from exhausting the same claim in state court pursuant to the Texas abuse of the writ doctrine.  Horsley v. Johnson, 197 F.3d 134, 136-37 (5th Cir. 1999).

Finally, a writ of habeas corpus may be denied on the merits regardless of whether petitioner exhausted his state remedies.  28 U.S.C. § 2254(b)(2).

**B.    Application of the AEDPA's Exhaustion Requirement to Petitioner's Claims.**

Respondent fails to argue which, if any, of petitioner's claims he properly exhausted.  In answering petitioner's state habeas application, the state asserted that all of petitioner's claims were forfeited because he failed to raise them on direct appeal, as required by Texas law.  Ex parte Muniz, App. No. WR-66,380-01, at 37-40.

The Fifth Circuit has explained that a petitioner who has failed to present his

9

claims on direct appeal cannot seek federal habeas relief until the claims have been raised and adjudicated in a state habeas proceeding.  See Ames v. Middlebrooks, 369 F.2d 113, 115 (5th Cir. 1966); see also Gardner v. Blackburn, 569 F.2d 856, 857 (5th Cir. 1978) (per curiam) (petitioner who did not present federal habeas issue during his state direct appeal has not fairly presented the issue to state court). Additionally, a petitioner who raises a claim in a manner in which the merits will not be considered has not fairly presented his claim to state courts.  See Castille v. Peoples, 489 U.S. 346, 351 (1989).  The Fifth Circuit has consistently explained:

> If a petitioner wishes to exhaust his constitutional claims, he is expected to present them before the state courts in a procedurally correct manner.  If he fails to do so, he has failed to give the state a fair opportunity to pass upon those claims and, as a result, has failed to meet the requirements of exhaustion.

McGee v. Estelle, 704 F.2d 764, 768 (5th Cir. 1983) (citing Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982); Brown v. Estelle, 530 F.2d 1280, 1283-84 (5th Cir. 1976)).

The Texas Court of Criminal Appeals has stated that "[i]t is well-settled 'that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.'"  Ex parte Gardner, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998) (citation omitted).  Accordingly, a claim which is not raised on direct appeal is procedurally defaulted.  Id. at 200.  The Fifth Circuit has

10

recognized this Texas procedural rule as being "firmly established" and "an adequate state ground capable of barring federal habeas review." Busby v. Dretke, 359 F.3d 708, 719 (5th Cir. 2004) (citations omitted).  Furthermore, a state court that reaches the merits of a petitioner's claim after denying the claim for procedural default still "expressly and unambiguously bases its denial of relief on a state procedural default." Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999) (citing Harris v. Reed, 489 U.S. 255, 264 n.10 (1989)).  This Court is generally "precluded from reviewing the merits of the claim unless [petitioner] establishes cause for the default and actual prejudice resulting from the violation." Soria v. Johnson, 207 F.3d 232, 249 (5th Cir. 2000) (citing Coleman, 501 U.S. at 750).  However, procedural default does not bar review "unless the last state court rendering a judgment in the case has 'clearly and expressly' indicated that its judgment ... rests on a procedural bar." Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Coleman, 501 U.S. at 729; Harris, 489 U.S. at 263).

Although petitioner failed to properly exhaust his state remedies, respondent completely failed to address exhaustion in moving for summary judgment.  The Fifth Circuit has held that "[a] district court may, in its discretion, raise the affirmative defense of procedural default in habeas proceedings *sua sponte*." Prieto v. Quarterman, 456 F.3d 511, 518 (5th Cir. 2006).  The Prieto court

11

cautioned <u>sua</u> <u>sponte</u> consideration should not be done lightly.  <u>Id.</u>  Specifically,

before doing so, this Court must "consider (1) whether the petitioner had notice

that the district court was going to raise the defense *sua sponte* and had an

opportunity to respond, and (2) 'whether the state's failure to raise the defense is

merely inadvertence or the result of a purposeful decision to forego the defense.'"

<u>Id.</u> (citation omitted).  Petitioner has not been given notice that this Court may

address whether his claims are procedurally defaulted, and thus, has not had the

opportunity to respond.

Nevertheless, petitioner's claims may be denied on the merits.  28 U.S.C.

§ 2254(b)(2).  It is respectfully recommended that petitioner's claims be denied as

time barred, or alternatively, on the merits.

## V.  STANDARD OF REVIEW

### A.    Federal Habeas Corpus Standard of Review Pursuant to the AEDPA.

A federal writ of habeas corpus is available to a state prisoner only if he is

being held in violation of the Constitution, laws, or treaties of the United States.

<u>Boyd v. Scott</u>, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam).  Pursuant to the

AEDPA, which is applicable to habeas petitions filed after its effective date,

"federal habeas relief is only merited where the state court decision is both

incorrect *and* objectively unreasonable."  <u>Morrow v. Dretke</u>, 367 F.3d 309, 313

(5th Cir. 2004) (emphasis in original) (citing <u>Williams v. Taylor</u>, 529 U.S. 362,

411 (2000)); 28 U.S.C. § 2254(d)(1); <u>see</u> <u>also</u> <u>Riddle v. Cockrell</u>, 288 F.3d 713,

716 (5th Cir. 2002).  The AEDPA's provisions "ensure that state-court convictions

are given effect to the extent possible under law."  <u>Bell v. Cone</u>, 535 U.S. 685, 693

(2002) (citation omitted).

      The Supreme Court has concluded that the "contrary to" and "unreasonable

application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings.  <u>Id.</u> at

694 (citing <u>Williams</u>, 529 U.S. at 404-05).  The <u>Bell</u> Court explained:

> A federal court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the
> governing law set forth in our cases, or if it decides a
> case differently than we have done on a set of materially
> indistinguishable facts.  The court may grant relief under
> the "unreasonable application" clause if the state court
> correctly identifies the governing legal principles but
> unreasonably applies it to the facts of the particular case.
> The focus of the latter inquiry is on whether the state
> court's application of clearly established federal law is
> objectively unreasonable, and we stressed in *Williams*
> that an unreasonable application is different from an
> incorrect one.

<u>Id.</u> (citations omitted).

      The Fifth Circuit has held that federal courts may not grant a writ of habeas

corpus merely on the finding of an error by a state court, but rather only where a

"state court arrives at a conclusion opposite to that reached by [the Supreme Court]

on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted).  A federal habeas court is to review only a state court's decision, and not the written opinion explaining its decision. Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003).  The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning." Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001). Furthermore, a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is only available if a state court decision is unreasonable. Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000).  A federal district court "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  The focus of the "unreasonable application" test of § 2254(d) is "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every

14

angle of evidence."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam).

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'"  Morrow, 367 F.3d at 315 (quoting 28 U.S.C.  § 2254(e)(1)); see also Jackson v. Johnson, 150 F.3d 520, 524 (5th Cir. 1998).  The presumption of correctness is accorded to adjudications made by a state court during review of a petitioner's state petition for habeas corpus relief. See Morrow, 367 F.3d at 315.  The burden to rebut the presumption of correctness remains on petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair."  Id. (citing Valdez v. Cockrell, 274 F.3d 941, 950-51 (5th Cir. 2001)).  The Fifth Circuit has stated that the presumption of correctness also applies to mixed questions of law and fact.  Valdez, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted).  Findings of fact may be implied from conclusions of law.  See Goodwin v. Johnson, 132 F.3d 162, 183-84 (5th Cir. 1997).

**B.      Motion for Summary Judgment Standard of Review.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases.  <u>Clark v. Johnson</u>, 202 F.3d 760, 764 (5th Cir. 2000).  Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and by drawing all reasonable inferences in favor of the party opposing the motion.  <u>Caboni v. Gen. Motors Corp.</u>, 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Williams v. Adams</u>, 836 F.2d 958, 960 (5th Cir. 1988).  The controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that summary judgment is not appropriate.  <u>Matsushita</u>

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fields v. City of

S. Houston , 922 F.2d 1183, 1187 (5th Cir. 1991).  The non-movant cannot rest on

the mere allegations of the pleadings to sustain his burden, but must set forth

material controverted facts in the response to the motion for summary judgment.

Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

(1986).  Summary judgment is proper if the non-movant fails to make a showing

sufficient to establish the existence of an element essential to his case on which he

bears the burden of proof.  ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438,

441 (5th Cir. 1995); Celotex, 477 U.S. at 322-23.

## VI.  DISCUSSION

**A.    Application of the AEDPA's Deference to Petitioner's Claim.**

To the extent petitioner raised similar claims in his state application for

habeas relief, Texas state courts have already considered and rejected petitioner's

claims.  Ex parte Muniz, App. No. WR-66,380-01, at cover.  The Texas Court of

Criminal Appeals denied his state habeas application without written order.  Id.

This denial of petitioner's application, even though it does not contain a written

opinion, is not silent or ambiguous.  See Ex parte Torres, 943 S.W.2d 469, 472

(Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the

merits).  It is a decision on the merits and is entitled to the AEDPA's deference.  28

17

U.S.C. § 2254(d); see also Neal v. Puckett, 239 F.3d 683, 686 (5th Cir. 2001) (in the context of federal habeas proceedings, "adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive").

Thus, deference to the state court decision is mandated by § 2254(d). See Morrow, 367 F.3d at 313. Petitioner is not entitled to federal habeas relief unless he can demonstrate that the state court's adjudication on his claims was "contrary to, or involved an unreasonable application, of clearly established federal law" or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

**B.     Petitioner's Claims are Time Barred.**

**1.     Statute of Limitations Pursuant to the AEDPA.**

The AEDPA provides a one-year statute of limitations for state prisoners to challenge a conviction by the filing of a federal petition for habeas corpus relief. Prieto, 456 F.3d at 514 (citing 28 U.S.C. § 2241(d)). A petitioner has one year from the date his conviction becomes final to file his federal petition for habeas relief. Id. A properly filed state application for post-conviction relief tolls the AEDPA period of limitations for the entire time the state application is pending. Id. A state application for post-conviction relief is "*properly* filed when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (italics in original). A

18

state application for post-conviction relief is pending "until the application has achieved final resolution through the State's post-conviction procedures." Carey v. Saffold, 536 U.S. 214, 220 (2002). While a state application for post-conviction relief generally tolls the AEDPA limitations period, a state application for habeas relief that is not filed within the federal limitations period does not toll the limitations period under § 2244(d)(2). Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000).

Under "rare and exceptional circumstances," equitable tolling may also apply pursuant to the AEDPA. In re Wilson, 442 F.2d 872, 875 (5th Cir. 2006) (per curiam) (quoting Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002)). Equitable tolling may only apply "'where it is necessary to preserve a plaintiff's claims when strict application of the statute of limitations would be inequitable.'" Id. (quoting Fierro, 294 F.3d at 682). Petitioner's failure to comply with the AEDPA's statute of limitations must result from "an extraordinary factor beyond the plaintiff's control" that prevents filing on time. Felder v. Johnson, 204 F.3d 168, 174 (5th Cir. 2000). Ignorance of the law is insufficient to warrant equitable tolling, even for a pro se petitioner. See Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999).

19

**2.     Petitioner Has Not Shown He is Entitled to Tolling of the
Limitations Period.**

Petitioner's petition for discretionary review to the Texas Court of Criminal
Appeals was due no later than November 28, 2005.  <u>See</u> Letter to Counsel from
Clerk of the Thirteenth Court of Appeals, dated October 19, 2005.  He failed to
comply with the deadline, and on March 8, 2006, the court dismissed his petition
for discretionary review as untimely filed.  <u>Muniz v. State</u>, PD-1631-05 (Tex.
Crim. App. Mar. 8, 2006).  On November 14, 2006, he filed a state application for
writ of habeas corpus.  <u>Ex parte Muniz</u>, App. No. WR-66,380-01, at 2-36.  On
January 17, 2007, the Texas Court of Criminal Appeals denied his application
without written order.  <u>Id.</u> at cover.  On February 6, 2007, he filed this petition.
(D.E. 1, at 9).

Petitioner's conviction became final on November 28, 2005, the last date on
which he could have properly sought to appeal his conviction.  Thus, without any
tolling, the AEDPA's limitations period would have expired on November 28,
2006.  On November 27, 2006, the Texas Court of Criminal Appeals received his
state application for habeas relief from the state trial court.  <u>Ex parte Muniz</u>, App.
No. WR-66-380-01, at page before cover.  Petitioner's state habeas application is
dated November 14, 2006.  <u>Id.</u> at 36.  It was stamped as filed on the same day.  <u>Id.</u>
Thus, petitioner filed his state application for habeas relief two weeks before the

20

expiration of the AEDPA's limitations period.  On January 17, 2007, the Texas Court of Criminal Appeals denied his application without written order.  Id. at cover.  Twenty days later, on February 6, 2007, petitioner mailed his federal habeas petition.  (D.E. 1, at 9).  To have been timely, his petition needed to be mailed no later than January 31, 2007.  Thus, his petition was filed after the AEDPA's limitations period expired.

Petitioner does not allege that any extraordinary circumstance beyond his control prevented him from filing his federal petition for habeas relief before the expiration of the limitations period.  He does not demonstrate cause for the default or prejudice resulting from the default.  Furthermore, the Fifth Circuit has indicated that even when a petitioner does not receive immediate notice of a state court's decision, equitable tolling does not apply.  Kangas v. Dretke, 100 Fed. Appx. 977, 978 (5th Cir. June 14, 2004) (unpublished) (per curiam); see also Crutcher v. Cockrell, 301 F.3d 656, 657 (5th Cir. 2002) (per curiam) ("28 U.S.C. § 2244(d)(1)(A) looks to when a judgment becomes final, not when the petitioner becomes aware that the judgment is final.") (citations omitted).

It is respectfully recommended that petitioner's federal habeas petition is time barred pursuant to the AEDPA.

C.    **Petitioner's Claims of Ineffective Assistance of Counsel.**

Petitioner claims that he received ineffective assistance of counsel at his trial.  (D.E. 1, at 7).  First, he claims that his counsel failed to adequately prepare for his trial.  Id.  Second, he claims that counsel failed to file a pre-trial motion to suppress res gestae statements he made to the police at the time of his arrest.  Id.  Finally, he claims that his counsel inadequately cross-examined five of the state's witnesses.  Id. at 7, 14.

1.    **Standard of Review Pursuant to Strickland v. Washington.**

The Fifth Circuit has determined that "under AEDPA a state court decision rejecting a *Strickland* claim must be accepted unless it was an unreasonable application of its teaching."  Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir.), cert. denied, 127 S. Ct. 732 (2006).  To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that: (1) counsel's performance was deficient, and (2) that the deficient performance resulted in actual prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  In order to show counsel's performance was deficient, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  He must demonstrate that counsel's representation fell below an objective standard of

22

reasonableness.  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred.  Strickland, 466 U.S. at 690.  Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel.  Id. at 689.  The reviewing court must give great deference to counsel's performance, strongly presuming that counsel has exercised reasonable professional judgment.  Id. at 690; see also Romero v. Lynaugh, 884 F.2d 871, 876 (5th Cir. 1989) (there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance).

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993).  In addition, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (citations omitted).  However, a reviewing court need not consider the deficiency prong if it concludes that petitioner has failed to show actual prejudice.  Strickland, 466 U.S.

23

at 697; Amos, 61 F.3d at 348.

Under the second prong of the Strickland two-part test, petitioner may not simply allege, but must affirmatively prove actual prejudice, resulting from the ineffective assistance of counsel. Strickland, 466 U.S. at 693. Thus, he must affirmatively show that his counsel's actions deprived him of a fair trial. See Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987). Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient performance).

Petitioner has the burden of proof under the Strickland test. See Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on petitioner in federal habeas proceeding). He must establish "actual prejudice as a result of his counsel's ineffectiveness." Moody v. Johnson, 139 F.3d 477, 482 (5th Cir. 1998) (citations omitted). In addition, conclusory allegations of ineffective assistance of counsel do not give rise to a constitutional claim for federal habeas relief. See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) ("Because [petitioner] failed to set forth the nature of *any* of the errors trial counsel

24

purportedly failed to preserve and did not assert any resulting prejudice, the district court properly determined that these three claims of ineffective assistance were conclusory.").  The Fifth Circuit has further held that "'[i]n the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced [petitioner], ... we [can find] no merit to these [claims].'"  Id. (quoting Barnard v. Collins, 958 F.2d 634, 642 (5th Cir. 1992)).

Finally, in order to prove that he is entitled to federal habeas relief due to ineffective assistance of counsel, petitioner must overcome the presumption of correctness to which the state court's findings are entitled.  See Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that the test for federal habeas purposes is *not* whether [petitioner made a showing under *Strickland*, but] ... whether the state court's decision-that [the petitioner] did *not* make the *Strickland*-showing-was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim.").

## 2.    Petitioner's Claim That Counsel Failed to Adequately Prepare for Trial.

Petitioner claims that his counsel failed to adequately prepare for trial.  (D.E. 1, at 7).  In addressing this claim, he appears to be relating counsel's failure to prepare for trial to counsel's failure to file pre-trial motions to suppress, which is

25

addressed below.  Petitioner provides no other information or support for his claim that counsel failed to adequately prepare for trial.

He does not specify what additional preparation counsel needed to undertake.  Absent a showing of how his counsel's strategic choices regarding trial strategy were not within the realm of acceptable professional assistance, this Court cannot accept petitioner's claim that his counsel rendered ineffective assistance such that he was denied his right to a fair trial.  See Yohey, 985 F.2d at 228. Petitioner has presented no more than conclusory allegations that his trial counsel rendered ineffective assistance by failing to prepare an adequate defense.  Without more, this Court cannot grant habeas relief.  See Miller, 200 F.3d at 282.  Petitioner has also not presented any facts to suggest the state court's adjudication of his claim was contrary to federal law or unreasonable.

It is respectfully recommended that petitioner's claim that his trial counsel rendered ineffective assistance by failing to adequately prepare for trial is conclusory and does not state a claim for federal habeas relief.

**3.    Petitioner's Claim That Counsel Failed to File a Motion to Suppress.**

Petitioner claims that his counsel should have filed a pre-trial motion to suppress res gestae statements he made to emergency responders Jason Le, Karl Wright, and Charla Hemerly.  (D.E. 1, at 10).  He argues that "there is doubt as to

26

whether" he ever made the statements, and he claims that the officers misunderstood his statements.  Id. at 11.  He further contends that trial counsel failed to object at trial when the officers testified regarding the statements.  Id. at 12.

The Fifth Circuit has established that a petitioner cannot succeed on a claim of ineffective assistance of counsel due to counsel's failure to file a motion to suppress unless the petitioner shows that the motion would have merit.  See United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) (finding petitioner's claim of ineffective assistance of counsel due to counsel's failure to file a motion to suppress to be without merit because "[c]ounsel is not required by the Sixth Amendment to file meritless motions").  Furthermore, petitioner must overcome the presumption of correctness to which the state court's factual findings are entitled and must establish that the state court's finding that counsel did not render ineffective assistance was unreasonable and contrary to federal law.

The Supreme Court has held that "the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during 'custodial interrogation' without a prior warning."  Illinois v. Perkins, 496 U.S. 292, 296 (1990).  "Custodial interrogation' is "'questioning initiated by law enforcement officers after a person has been taken into custody....'"  Id. (quoting

27

Miranda v. Arizona, 384 U.S. 436, 444 (1966)).  However, if a suspect "freely and

voluntarily boast[s] about his crimes ... [and an officer asks the suspect to clarify

his statement,] [t]his spontaneous colloquy does not constitute an 'interrogation' ...

as conceptualized in *Miranda*."  United States v. Gonzales, 121 F.3d 928, 940 (5th

Cir. 1997); see also United States v. Navar, 611 F.2d 1156, 1158 (5th Cir. 1980)

(per curiam) (finding no error in the admission of a remark that was "voluntary,

spontaneous, and not in response to interrogation").  If a suspect spontaneously

initiates dialogue with an officer, he waives his right to remain silent.  Id.

"'Interrogation ... reflect[s] a measure of compulsion above and beyond that

inherent in custody itself.'"  Gonzales, 121 F.3d at 940 (quoting Rhode Island v.

Innis, 446 U.S. 291, 300 (1980)).  Simply put, "'volunteered statements of any

kind are not barred by the Fifth Amendment....'"  United States v. Savell, 546 F.2d

43, 46 (5th Cir. 1977) (quoting Miranda, 384 U.S. at 478).  If petitioner's

statements to the officers were voluntary, unsolicited, and spontaneous, then his

counsel's failure to file a motion to suppress the statements did not cause him

prejudice because the statements were properly admissible.

### a.      Petitioner's Statements to Officer Le.

When police arrived at the home on the night of the incident, petitioner was

yelling at the victim, and when he saw Officer Le, threw up his hands and said, "I

did it.  I did it."  3 R.R. 263-64; 4 R.R. 7.  Officer Le testified that he had not yet

had the chance to give petitioner <u>Miranda</u> warnings, that petitioner was not in

custody, and that he did not ask any questions before petitioner made the

statement.  3 R.R. 299.  At trial, petitioner testified that he was not speaking

angrily to the victim, and that he had in fact said, "Don't shoot.  Don't shoot."  8

R.R. 145-46.  His statement was voluntary, and was admissible as a hearsay

exception.  <u>See</u>, <u>e.g.</u>, Tex. R. Evid. 803(2) (excited utterance).  Thus, he cannot

show prejudice from his counsel's failure to file a motion to suppress the

statement.  Furthermore, he has not presented anything to indicate that the state

court's resolution of his claim was unreasonable or contrary to federal law.

### b.    Petitioner's Statements to Officer Hemerly.

Officer Hemerly testified that while petitioner was being photographed on

the night of the incident, he "said that he was having a disturbance with the victim,

and they had – she had gone into a room to get a gun, and so, he had stabbed her in

self-defense."  4 R.R. 58.  He also repeatedly asked her about the victim's

condition, and said that he would never do anything to hurt her.  <u>Id.</u> at 61, 64.  The

record does not reflect that his statements were in response to an interrogation.

Furthermore, he testified to the same facts at trial as part of his defense.  Thus, he

cannot establish that his counsel's failure to file a motion to suppress the

29

statements he made to Officer Hemerly caused him prejudice.  He has not presented any evidence to overcome the presumption of correctness to which the state court's resolution of any factual issues for this claim is entitled, and also has not shown that the state court's resolution of his claim was an unreasonable application of, or contrary to federal law.

### c.      Petitioner's Statements to Officer Wright.

Officer Wright testified that when he arrived at the scene with Officer Le, petitioner threw up his hands and said "I did it.  I did it."  4 R.R. 3, 7.  Officer Wright handcuffed him, and as he led him out of the house, petitioner stated "that he did it because, 'She was trying to take over the house.'"  Id. at 12.  Officer Wright had not asked petitioner any questions.  Id. at 13.  Petitioner admitted at trial that after he received Miranda warnings, he told Officer Wright that he stabbed the victim in self defense.  8 R.R. 152.  He did not assert at trial that his statements to Officer Wright were involuntary.  Because petitioner testified at trial that he made the statements, he cannot show prejudice from counsel's failure to file a motion to suppress the statements.

None of the officers interrogated petitioner, and his statements were admissible as hearsay exceptions.  See Richardson v. Green, 677 S.W.2d 497, 500-01 (Tex. 1984) (discussing admissibility of statements as res gestae pursuant to

Texas law); see also Doss v. Apache Powder Co., 430 F.2d 1317, 1322 (5th Cir. 1970) (discussing the res gestae doctrine under Texas law).  Furthermore, petitioner has not presented any evidence to overcome the presumption of correctness to which the state court's factual findings are entitled, and has not shown that the state court's adjudication of this claim was unreasonable or contrary to federal law.

It is respectfully recommended that petitioner's claim that he received ineffective assistance of counsel because his counsel failed to file a motion to suppress the statements he made to police officers on the night of the incident is without merit.

### 4.   Petitioner's Claim That Counsel Failed to Adequately Cross-Examine State's Witnesses.

Petitioner claims that his trial counsel failed to adequately cross-examine Officer Le, Officer Wright, Officer Hemerly, Officer Hernandez (his brother and the victim's boyfriend), and Lieutenant Stimmler.  (D.E. 1, at 14).

Petitioner has not shown that counsel's decisions regarding cross-examination were not legitimate strategic choices.  For example, he argues that counsel should have further cross-examined his brother about whether the victim had ever threatened him with a gun.  Id. at 16.  He argues that his brother's admission that she had pulled a gun on him, but had not threatened him with it, was

inconsistent because pulling a gun on someone constitutes a threat pursuant to Texas law.  <u>Id.</u>  However, in the very next sentence, petitioner notes that his counsel <u>did</u> cross-examine his brother about whether the victim had ever threatened him with a gun.  <u>Id.</u>  Nevertheless, he argues that counsel failed to properly impeach his brother's testimony.  <u>Id.</u> at 17.

Strategic decisions by trial counsel are granted a heavy measure of deference.  <u>Mann v. Scott</u>, 41 F.3d 968, 983-84 (5th Cir. 1994) (citations omitted). The Fifth Circuit has held that petitioner's "desire to have a specific defense theory presented does not amount to ineffective assistance on federal habeas review." <u>Coble v. Dretke</u>, 444 F.3d 345, 351 (5th Cir. 2006) (citation omitted) (addressing the petitioner's claim that counsel ineffectively cross-examined the state's witnesses).  Petitioner is challenging his trial counsel's overall strategy, to which this Court must give deference, and has not presented any reason why the state court's decision on this claim was unreasonable or contrary to federal law.  <u>See id.</u> at 351-52.

It is respectfully recommended that petitioner's claim that his counsel failed to effectively cross-examine the state's witnesses is without merit.

**D.      Petitioner's Claim Regarding Defects in His State Habeas Proceeding.**

Petitioner claims that he was denied due process during his state habeas proceeding because the state, in its answer, asserted that petitioner's claims were procedurally defaulted pursuant to Texas law because petitioner failed to raise his claims in his direct appeal.  (D.E. 1, at 19).  Petitioner's claim is wholly without merit.  Regardless of whether petitioner can prove any infirmities existed in his state habeas proceeding, the Fifth Circuit has determined that his claim must fail because "infirmities in state habeas proceedings do not constitute grounds for relief in federal court."  Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997) (citation omitted).

It is respectfully recommended that petitioner's claim regarding defects in his state habeas proceeding is without merit.

## VII.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may sua sponte rule on

33

a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2254 petitioner to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483).

As to claims that a district court rejects solely on procedural grounds, a petitioner must show both that "jurists of reason would find it debatable whether

34

the petition states a valid claim of the denial of a constitutional right <u>and</u> that jurists

of reason would find it debatable whether the district court was correct in its

procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

Here, it is respectfully recommended that reasonable jurists could not debate

the denial of petitioner's § 2254 petition on substantive or procedural grounds nor

find that the issues presented are adequate to deserve encouragement to proceed.

<u>Miller-El</u>, 537 U.S. at 327 (citing <u>Slack</u>, 529 U.S. at 484).  Accordingly, it is

respectfully recommended that the Court find that petitioner is not entitled to a

certificate of appealability as to his claims.

## VIII.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that respondent's

motion for summary judgment, (D.E. 8), be granted, and that petitioner's petition

for writ of habeas corpus be dismissed with prejudice.  It is further respectfully

recommended that petitioner be denied a certificate of appealability.

Respectfully submitted this 23rd day of May 2007.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 8(b) of the Rules Governing § 2254 Cases; Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).